Jose Antonio Cervantes (*admitted Pro Hac Vice*)
Cervantes Hodges Law Firm
333 H Street, Suite 5000
Chula Vista, CA 91910
619-356-0777 Phone
619-345-4720 Fax
Email: Antonio@cervanteshodges.com

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| DAVID MCDONALD,<br><br>        Plaintiff<br><br>vs.<br><br>ONPOINT COMMUNITY CREDIT UNION, et al<br><br>        Defendants. | Civil Case No. 3:16-CV-01649-YY<br><br>PLAINTIFF DAVID McDONALD's OPPOSITION TO DEFENDANT ONPOINT's MOTION FOR SUMMARY JUDGMENT |

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

UNDISPUTED ISSUES

For purposes of the instant motion, Plaintiff concedes that:

a)    There is no private right of action under 15 U.S.C. 1681s-2(a);

b)    Plaintiff's claims under Oregon state law are pre-empted.

Plaintiff opposes the remainder of OnPoint's motion for summary judgment on the following grounds.

STANDARD FOR SUMMARY JUDGMENT

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. The party opposing the motion "need only present evidence from which a jury might return a verdict in his favor"

in order to survive a motion for summary judgment. *Id.* at 257.

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. See *Anderson*, supra, at 250-251.

If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence in evidence, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e)(1).

## EVIDENTIARY OBJECTIONS

These have been submitted via a separate pleading. To summarize for purposes of argument herein, OnPoint's principal declarant, Veronica Ervin, lacks personal knowledge of the details of the events at issue herein and relies on hearsay and self-serving "reports" to argue that OnPoint's investigation was indisputably reasonable. She is too highly-placed with too many responsibilities to credibly maintain that she personally observed OnPoint's investigation in a meaningful fashion that would lend weight to her claims.

## THE REASONABLENESS OF ONPOINT'S INVESTIGATION IS NOT CERTAIN AS A MATTER OF LAW

Plaintiff has presented an expert declaration to demonstrate that a strong factual case can be made that OnPoint's investigation of the disputed debt (on multiple occasions) was not reasonable under the standard for furnishers. Evan

Hendricks has stated that OnPoint's use of the "97" code for the "charged-off" debt was below the required standard (Declaration of Evan Hendricks (DEH) - Paragraphs 11 and 13) and that the reporting of a balance on the "charged-off" account was substandard as well (DEH - Paragraph 10).

Furthermore, OnPoint's contention that its inquiry was reasonably limited to the "identity" of Plaintiff by virtue of the information it received from the CRA's is not only legally unsupported by OnPoint's own case [*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)], it is also unsupported by subsequent District decisions within the Ninth Circuit, and factually disputable as well.

As shown in Exhibits 15 and 16 (`David McDonald's June 7, 2016, dispute letters to two CRA's), these letters describe in detail the nature of McDonald's dispute. Far from claiming he had been misidentified, he labels the debt uncollectible as a deficiency and its assertion was wrongful because the debt was uncollectible, not because he was misidentified. OnPoint has admitted that David McDonald's handwritten dispute letters may have been received by OnPoint along with the ACDV's (see also DEH, Paragraph 11 - many of the ACDV's contained attachments). Victoria Ervin states in her deposition that:

> A. If it was an attachment to a credit reporting dispute, then yes.
>
> Q. Okay. Okay. But you don't know if OnPoint actually received it or not?
>
> A. If it were -- I know that there were attachments noted on the credit reporting disputes. If that's what the attachment was, then yes, it was reviewed.

DEV, Exhibit 17, Page 35, lines 14-21

Note that this is another example of Ms. Ervin's lack of personal knowledge. She is clearly hedging about whether OnPoint reviewed Mr. McDonald's handwritten dispute letters as part of its investigation. This ambiguity should be

3

resolved in Plaintiff's favor as the opposing party (see *Anderson*, supra, at 255).

A similar situation was considered in *Vandonzel v. Experian Info. Sols., Inc.* (N.D.Cal. July 31, 2017, No. 17-CV-01819-LHK) 2017 U.S.Dist.LEXIS 120117. Discussing the parameters of the *Gorman* ruling, that Court stated:

> As Chase points out, in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009), the Ninth Circuit held that when a furnisher receives a dispute, "[t]he pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute." Mot. at 5. Thus, Chase argues that as a matter of law, it was reasonable for Chase not to investigate a bankruptcy *discharge* when the notice Chase received specifically mentioned only a bankruptcy *filing*.
>
> However, *Gorman* does not support Chase's argument that an investigation of disputed information is narrowly limited to the exact wording of the dispute letter. In *Gorman*, the Ninth Circuit found on a motion for summary judgment that a furnisher's investigation was reasonable in part because the plaintiff's dispute letter and the notice sent to the furnisher "provided *no* suggestion of the nature of Gorman's dispute . . . ." **Id. at 1158** (emphasis added). Thus, *Gorman* stands for the proposition that a furnisher need not conduct a detailed investigation if the dispute letter provides no indication about the nature of the consumer's dispute. However, nothing in the *Gorman* opinion suggests that in evaluating "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute," a Court should narrowly limit the "nature of the dispute" to the precise wording of the dispute letter. **Id. at 1157**. Indeed, the *Gorman* panel specifically amended its opinion to add a footnote to the sentence quoted above, which stated that "[i]n deciding that the notice determines the nature of the dispute to be investigated, we do not suggest that it also cabins the scope of the investigation once undertaken." *Gorman*, 584 F.3d at 1157 n.11; [citations]. This footnote makes clear that as long as a consumer provides reasonable notice of the nature of a dispute, a furnisher's investigation cannot be "cabin[ed]" to the exact wording of the dispute notice. *Id.* Instead, the furnisher's duty to investigate depends on what is "reasonable," which often cannot be determined based on the complaint alone. *Id.* at 1157.

4

*Vandonzel*, supra, at 10-12

## CONCLUSION

In light of *Gorman*'s caution against a "cabining" standard, to the extent OnPoint contends that it has no duty to investigate beyond the black-letter parameters of the ACDV's, it admits that its employees follow a deficient and incomplete standard for "reasonable investigation."

David McDonald had a good faith belief that he had communicated the substance of his dispute accurately and completely via his letters of April 3 and June 7, 2016 (Exhibits 13-16). OnPoint had superior knowledge to that of the CRA's (i.e., TransUnion, Experian and Equifax) as to the nature of the "unsecured loan" it was reporting (e.g. that it was a debt that OnPoint was legally barred from collecting).  A reasonable investigation should have included communication with the CRA's and/or David McDonald as to the original dispute notification they received, including but not limited to requesting a copy of same), particularly where the dispute was submitted on multiple occasions by all three major CRA's and the decision of how to report the debt was undertaken unilaterally by OnPoint without David McDonald's input or knowledge.

Just as CRA's cannot shield themselves from liability under the FCRA by merely "parroting" the information provided by the furnisher, furnishers should not be permitted to shield themselves from liability by unreasonably limiting their investigation to a handful of ACDV codes truncated from the consumer's original communications.  OnPoint had superior detailed knowledge to that of the CRA's regarding the subject debt.  A jury could likely find that a "reasonable" investigation should have included more proactive investigative efforts.  The debt in question was substantial and its legal status was complex.  David McDonald had a good faith belief that his original secured debt was extinguished via foreclosure.

He sincerely believed he had no "unsecured debt" with OnPoint and was not aware the debt had been charged off.  At the very least, his letters of June 7, 2016 (Exhibits 15 and 16) set forth the information with more than enough detail to belie any claims by OnPoint as to ignorance of the subject in dispute or its scope.

Allowing furnishers to avoid liability by hiding behind Byzantine industry practices wholly opaque to those outside the reporting system, including the "dumbing down" of dispute details to save costs and processing time, frustrates the intent of Congress.  The *Gorman* court's concern for over-narrowing the definition of "reasonable" investigation should be honored, not disregarded, particularly where the debts under consideration in *Gorman* were simple in comparison to the legally uncertain and highly technical treatment of mortgage debts shielded from collection in anti-deficiency states.

OnPoint's motion for summary judgment should be denied as to the reasonableness of its investigation of any dispute herein.

              Respectfully submitted,

              CERVANTES & HODGES LAW FIRM

<u>Sept. 27, 2017</u>          <u>/s/ *J. Antonio Cervantes*</u>
Date              J. Antonio Cervantes, Esq.
                of Attorneys for Plaintiff