UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DAVID MCDONALD,

        Plaintiff,

   v.

ONPOINT COMMUNITY CREDIT UNION, a federally insured credit union; EQUIFAX INFORMATION SERVICES, LLC, a foreign limited liability company; EXPERIAN INFORMATION SOLUTIONS, INC., a foreign business corporation; TRANS UNION, LLC, a foreign limited liability company,

        Defendants.

Case No. 3:16-cv-01649-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge:

    Defendant OnPoint Community Credit Union ("OnPoint") moves for summary judgment (ECF #67) against Claims One and Two of plaintiff David McDonald's (McDonald's) Amended Complaint (ECF #33). In Claim One, McDonald asserts that OnPoint violated subsections 1681s-2(a) and (b) of the Fair Credit Reporting Act, 15 USC §§ 1681-1681x ("FCRA"). In Claim Two, McDonald claims that OnPoint violated Oregon law, specifically ORS Chapter 646 et. seq.

1 – FINDINGS AND RECOMMENDATIONS

McDonald concedes that there is no private cause of action under 15 U.S.C. 1681s-2(a) and that his state law claims are preempted by the FCRA. Accordingly, OnPoint's motion for summary judgment should be granted regarding Claim One to the extent it alleges a cause of action under 15 U.S.C. 1681s-2(a) and as to Claim Two in its entirety. However, OnPoint's motion for summary judgment should otherwise be denied for the reason set forth below.

## FACTUAL BACKGROUND

In October 2007, plaintiff David McDonald ("McDonald") procured what became a $600,000 home equity line of credit ("HELOC") from OnPoint secured by a deed of trust on his personal residence. Decl. Kimberly Hanks, Ex. 1 ("McDonald Dep."), at 2-3, ECF #69-1. McDonald made his last payment to OnPoint in March 2010, and as of July 2010, owed $592,396.65 plus interest and late charges. Decl. Veronica Ervin ("Ervin Decl.") ¶ 4, ECF #68. In December 2010, OnPoint sold the property for $410,000 through non-judicial foreclosure proceedings, creating a $195,960 deficiency. *Id.* ¶ 5. Because Oregon is a non-recourse state, OnPoint was not allowed to collect the deficiency. *See* ORS 86.797(2). OnPoint nevertheless reported the deficiency ("the Account") to defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") in April 2013 as an unsecured loan for $195,960, originating in 2007 at $600,000, in a "default" and "charged-off" status with an outstanding balance of $195,960. Ervin Dec. ¶ 6. Defendants Equifax, Experian, and Trans Union (collectively "the CRAs") are consumer reporting agencies as defined by 15 USC § 1681a(f).

In September 2015, McDonald applied for a home loan with two separate mortgage companies and was allegedly denied credit due to the "charged-off" status and $195,960 balance on the Account. McDonald Dep. 14, ECF #69-1; *see also* Am. Compl. ¶ 13, ECF #33. In April

2 – FINDINGS AND RECOMMENDATIONS

2016, McDonald wrote to the CRAs notifying them that he did not have an unsecured loan with OnPoint and asked them to remove the Account from his credit report. Decl. Jose Cervantes ("Cervantes Decl."), Exs. 13 & 14 (together "1st Notice of Dispute"), ECF #72-1. His letters stated: "OnPoint has placed a collection on my credit report, number 766080156. Remove this collection. I do not have an unsecured loan with OnPoint." *Id.*

The CRAs investigated McDonald's notice and verified that the Account belonged to him. Ervin Decl. ¶ 8; Decl. David McDonald, Exs. 9–12, ECF #72-4. In June 2016, McDonald wrote the CRAs again, requesting reinvestigation and asking them to remove the Account from his credit report. Cervantes Decl., Exs. 15 & 16 (together "2nd Notice of Dispute"), ECF #72-1. McDonald indicated that the $195,960 was an uncollectible deficiency, and attached a copy of the Trustee's Deed, which showed that OnPoint had foreclosed on the property. *Id.* His second set of letters was more detailed than the first:

> I got your report ware (sic) you tell me that you investegated[] (sic) my dispute with OnPoint CU placing an unsecured loan number Acc # 76608 in question. I told you I never had this loan. Send me the information OnPoint CU sent you to prove I owe them this money on a default unsecure loan. Then reinvestigate this wrongful debt.
>
> The only loan I had with Onpoint CU was a moragage (sic) for $600,000 in 2010, that was secure loan in a line of credit deed of trust, that OnPoint forclosed (sic) on and got it back and sold the property to themselves for $410,000 (see attached).
>
> Our (sic) they trying to get back the differance (sic) of money—(deficency) (sic) that's not allow (sic) in Oregon, to try to collect and deficiency by saying it's an unsecured loan.
>
> Removed (sic) this debt from my credit report ASAP, I never had an unsecured loan with OnPoint CU.
>
> PS I can not get a home loan, and have been turn (sic) down because of the wrongful collection on my credit report!

*Id*.

3 – FINDINGS AND RECOMMENDATIONS

OnPoint received notices of dispute from each CRA in April 2016 and again in June 2016 in the form of Automated Customer Dispute Verifications ("ACDVs"). Ervin Decl. ¶¶ 7-9, ECF #68. Several of the ACDVs contained attachments, which McDonald contends were copies of the letters he sent to the CRAs.[1] Hendricks Decl. ¶ 11 n.1, ECF #72-2.

In both its investigation and reinvestigation, OnPoint identified the substance and nature of the notices of dispute to be related solely to the ownership of the Account, i.e., whether the Account belonged to McDonald. Ervin Decl. ¶¶ 8-9, ECF #68. OnPoint had its collection department review its records for ownership information, and responded to the disputes indicating that ownership of the Account was accurately reported. *Id.*

## STANDARDS

Under FRCP 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FRCP 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated,

---

[1] Likewise, Veronica Ervin, OnPoint's Chief Compliance Officer, acknowledged OnPoint received and reviewed the letters. Cervantes Decl, Ex. 17, at 40 (Ervin Dep. at 35), ECF #72-1 ("I know that there were attachments noted on the credit reporting disputes. If that's what the attachment was, then yes, it was reviewed."); Ervin Decl. ¶ 1, ECF #68.

only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.* A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu,* 198 F.3d at 1134.

## FINDINGS

### I. Evidentiary Objections

McDonald makes two evidentiary objections, which should be overruled. Pl. Evid. Obj., ECF #72-3. First, McDonald objects to Veronica Ervin's Declaration (ECF #68) on the basis that she lacks personal knowledge in violation of FRCP 56(c)(4).[2] *Id.* at 1. McDonald complains that Ervin is a "high-level" supervisor who oversees three departments, only one of which is involved in the instant dispute. *Id.* at 2. McDonald suggests that "[t]he actual persons in that department responsible for investigating credit reporting disputes," such as Sonia Garcia and Kayla Goodwin, are more knowledgeable and thus better suited to submit declarations. *Id.*

However, Ervin, who is the Senior Vice President/Chief Compliance Officer at OnPoint, declared that she has "control, custody and knowledge of OnPoint's loan files, which . . . are kept

---

[2] FRCP 56(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

in the regular course of business," including McDonald's account records.  Ervin Decl. ¶ 1, ECF #68.  She further attested that her declaration was "based on [her] personal knowledge and [her] review of documents made and kept in the ordinary course of OnPoint's business."  *Id.*

"[P]ersonal knowledge may be inferred to one in a responsible, supervisory position, where that person is required to be familiar with the practices of those [s]he supervises."  *Daily Herald Co. v. Munro*, 758 F.2d 350, 355 n. 6 (9th Cir. 1984); *see also CNET Networks, Inc. v. Etilize, Inc.*, No. C 06–5378 MHP, 2008 WL 4104287, *15 (N.D. Cal. Sept. 2, 2008) (holding that even though CEO stated in a conclusory manner that his declaration was based on personal knowledge, it was presumed that as a CEO, he "must have knowledge as to how his company conducts business").  Although other employees may also have personal knowledge and could have submitted affidavits, Ervin's review of the records is sufficient to establish personal knowledge.  *See Algaier v. Bank of Am., N.A.*, No. 2:13-CV-0380-TOR, 2015 WL 5944177, at *4 (E.D. Wash. Oct. 13, 2015), *aff'd*, 691 F. App'x 497 (9th Cir. 2017) (holding that supervisory corporate officer had personal knowledge where she had reviewed documents kept in the ordinary course of business; it was not necessary for her to be "the representative who spoke with Plaintiffs and took notes of the conversations, the employee who electronically stored all the loan documents, nor the employee who actually received Plaintiffs' loan payments and credited the account in order to speak to their authenticity and contents").

McDonald also objects to Exhibit 4 of Ervin's declaration, a document entitled "OnPoint's Credit Bureau Reporting by Account," on grounds that it lacks a proper foundation as a business record.  He argues that the report is inadmissible hearsay because OnPoint has failed to establish the records are timely, were prepared using reliable methods or data, or were produced in the normal course of business pursuant to FRE 803(6).  Pl. Evid. Obj. 3, ECF #72-3.

6 – FINDINGS AND RECOMMENDATIONS

FRE 803 contains exceptions to the rule against hearsay, including subsection 6, which allows for the admission of records of a regularly conducted activity if a proper foundation has been laid. Here, however, Exhibit 4 is not hearsay because OnPoint is not offering it to prove the truth of the matter asserted therein. *See* 801(c).[3] OnPoint is offering Exhibit 4 to show what it reported to the CRAs, not to prove that the information it reported was true and correct. Because Exhibit 4 is not hearsay, McDonald's evidentiary objection on that basis should be overruled.

## II.     Merits of Motion for Summary Judgment Regarding Subsection 2(b) Claim

Because there is a genuine issue of material fact regarding whether OnPoint conducted a "reasonable investigation" pursuant to 15 USC § 1681s-2(b), OnPoint's motion for summary judgment on this aspect of Claim One should be denied.

### A.    Relevant Law

Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47 (2007). The FCRA imposes duties on both CRAs and furnishers, i.e., entities such as banks that provide credit information to CRAs. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). Section 1681s-2 sets forth furnishers' duties. Subsection (a) details the furnishers' duty to provide accurate information but, as McDonald concedes, does not provide for a private right of action. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002) (citing 15 USC § 1681s-2(a)).

---

[3] FRE 801(c) provides:
    "Hearsay" means a statement that:
    (1) the declarant does not make while testifying at the current trial or hearing; and
    (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

7 – FINDINGS AND RECOMMENDATIONS

Subsection (b) imposes a second category of duties on furnishers, which consumers may enforce. *Gorman*, 584 F.3d at 1154 (citing 15 USC § 1681s-2(b)) ("The FCRA expressly creates a private right of action for willful or negligent noncompliance . . . arising under subsection (b)."). Subsection (b)(1) provides that, after receiving a notice of dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . . ;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . . ; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . .
>
>> (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the CRAs].

15 USC § 1681s-2(b)(1)).

The CRA must provide the furnisher with all relevant information contained in the consumer's notice of dispute. *Gorman*, 584 F.3d at 1157. Receipt of the notice of dispute triggers the furnisher's duty to conduct a reasonable investigation. *Id.*; 15 USC § 1681s-2(b)(1)(A). The furnisher learns of the nature of the consumer's challenge to the reported item from the information contained in the notice of dispute. *Gorman*, 584 F.3d at 1157. However, the nature of the notice of dispute should not limit the scope of the investigation once undertaken. *Id.* at 1157 n.11; *but see Drew v. Equifax Information Servs., LLC*, 690 F.3d 1100, 1107 (9th Cir. 2012) ("an inadequate CRA notification may limit the scope of a furnisher's § 1681s-2(b) duty, for example, by excusing a more limited investigation"); *Scharer v. OneWest Bank, FSB*, No. CV 13-80 DSF (AGRX), 2014 WL 12558124, at *6 (C.D. Cal. Sept. 8, 2014)

(granting furnisher's motion for summary judgment on subsection (b) claim because notices of dispute related solely to account ownership). In determining whether summary judgment is appropriate, "[t]he pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157.

Subsection (b) "also requires a creditor, upon receiving notice of such dispute, to both report the results of the investigation and, 'if the investigation finds that the information is incomplete or inaccurate, report those results to the CRAs.'" *Id.* at 1162 (citing 15 USC §§ 1681s–2(b)(1)(C), (D)). To determine whether the information is incomplete or inaccurate, the Ninth Circuit has adopted what has been characterized as the "patently incorrect or materially misleading standard." *Bauer v. Target Corp.*, No. 8:12-CV-978-T-AEP, 2012 WL 4054296, at *3 (M.D. Fla. Sept. 14, 2012). "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for *omissions that render the reported information misleading*." *Gorman*, 584 F.3d at 1163 (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008)) (emphasis added). "Although the report may have been 'technically accurate' in the sense that it reflected the consumer's failure to make any payments on the loan, . . . 'a consumer report that contains *technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.*'" *Id.* (emphasis added). "[A] consumer's failure to pay a debt that is not really due 'does not reflect financial irresponsibility,' and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of the statute." *Id.* (quoting *Sanders*, 526 F.3d at 150).

Reasonableness is usually a question reserved for the jury because of "its unique competence in applying the 'reasonable man' standard." *Id.* at 1157 (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994). Therefore, summary judgment is appropriate when only one conclusion about the conduct's reasonableness is possible. *Id*. The plaintiff bears the burden of showing the investigation was unreasonable. *Id.* "The reasonableness of an investigation depends on the facts of the particular case, most importantly the CRA's description of the dispute in its notice." *Id.* at 1160. The Ninth Circuit has emphasized that the furnisher's duty to "investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Id.*

    **B.**    **Analysis**

        **1.**    **Incomplete or Inaccurate Information**

A genuine issue of material fact exists regarding whether the $195,600 balance on the Account, as reported, is incomplete or inaccurate and thus materially misleading. McDonald claims that OnPoint violated the FCRA because it reported the $195,960 deficiency as an unsecured loan in a "default" and "charged-off"[4] status—which is technically accurate—but

---

[4] "A 'charge-off' is an accounting designation for a loan that is deemed uncollectible because it is so far past due. This allows the bank the write off the loan, which may still be transferred to a collection agency for further collection attempts." *Murphy v. Equifax Info.*, No. 12-CV-6409 NGG VMS, 2013 WL 6562860, at *3 (E.D.N.Y. Dec. 13, 2013) (citing *Thomas P. Fitch*, DICTIONARY OF BANKING TERMS 80 (6th ed. 2012)).
>One can always volunteer, for example, to pay a discharged debt, and it is common for debtors to protect against a lien creditor's right to repossess collateral by reaffirming a secured debt. . . . However, a credit report that continues to show a discharged debt as "outstanding," "charged off," or "past due" is unquestionably inaccurate and misleading, *because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor*, that is, that the debtor has not received a discharge, that she has reaffirmed the debt

failed to report the balance due as "zero dollars" or otherwise communicate that the deficiency resulted from the foreclosure on a HELOC and could not be collected. He claims this omission materially misled prospective creditors and that a reasonable investigation would have uncovered and corrected this inaccuracy.

In support of his position, McDonald has submitted a declaration by Evan Hendricks, an expert on the FCRA. Hendricks Decl., ECF #72-2. In Hendricks' professional opinion "a charged-off account should not be reported with a balance other than zero." *Id.* ¶ 11. Hendricks elaborates:

> Any information regarding how much was charged off is relevant only to the lender/furnisher, and reporting the amount to CRA's gives a misleading impression that the consumer still has an obligation to potentially satisfy in the future. . . . A charged-off debt has a balance of zero. . . . The only way to accurately and completely describe the debt at issue is to both state that the account is "paid less than full balance, charged off" (e.g. account code 97, as referenced in Ms. Ervin's declaration at Paragraph 6) and to list the balance as zero.

*Id.* Hendricks further opines that "a reasonable investigation under the FCRA and related [industry] standards for 'furnishers' should have resulted in OnPoint correcting its reported information on each occasion of dispute to reflect a zero balance on the account in dispute herein." *Id.* ¶ 10. Viewing this evidence in the light most favorable to McDonald, a reasonable

---

> notwithstanding the discharge, or that the debt has been declared non-dischargeable. . . . A credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy. The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation. Nothing is now due. A past due debt represents a delinquent but legally enforceable obligation that must be resolved.

*In re Torres*, 367 B.R. 478, 487–88 (Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted) (emphasis added). While McDonald's debt was not discharged, it is nonetheless uncollectible under ORS 86.797(2).

11 – FINDINGS AND RECOMMENDATIONS

trier of fact could find that reporting the balance as $195,960 and not zero was misleading because a prospective creditor could conclude that OnPoint was legally entitled to collect the debt when it was not.

OnPoint argues that Hendricks' opinion regarding industry standards does not create a genuine issue of material fact because "district courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards is insufficient, without more, to state a claim for violation of the FCRA." Reply 13 (ECF #73) (quoting *Giusto v. Experian Info. Sols., Inc.*, No. 16-CV-04637-BLF, 2017 WL 1092373, at *5 (N.D. Cal. Mar. 23, 2017)). OnPoint relies on *Giusto*, in which the court granted the defendants' motion to dismiss because of pleading deficiencies; there, the complaint alleged nothing more than that the credit report deviated from industry standards. *Giuso*, 2017 WL 1092373, at *3-*5.

Here, however, McDonald has alleged the "more" that was lacking in *Giusto*: he asserts that the reported Account is misleading because it fails to convey that it is not collectible. That the report may not have met industry standards is ancillary—what matters is the misleading nature of the report. Instead of reporting the Account as an unsecured loan, McDonald alleges OnPoint should have communicated that it originated as a deficiency resulting from a foreclosure on the HELOC. If the Account had referenced the mortgage or if the charged-off balance read zero dollars, then prospective creditors arguably would have known it was not legally collectible.

OnPoint also contends it did not mislead anyone because it accurately reported that McDonald had defaulted on his loan and caused OnPoint to incur a loss of $195,960, facts that would be highly relevant to other potential creditors interested in assessing McDonald's creditworthiness. Reply 8, ECF # 73. While it may be true that OnPoint incurred a loss because McDonald defaulted on his loan, the fact remains that OnPoint failed to report the loan in a

charged-off status or that it resulted from a defaulted mortgage, arguably misleading potential creditors into believing that the balance was outstanding and collectible. Whether or not the balance was outstanding and collectible could certainly be material for potential creditors.

Several courts have denied a furnisher's motion to dismiss a plaintiff's subsection (b) claim where the plaintiff alleged that the information was materially misleading because it was incomplete. *E.g.*, *Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-CV-744-BAS-DHB, 2016 WL 7178855, at *6 (S.D. Cal. Dec. 9, 2016) (holding plaintiff sufficiently alleged FCRA claim by asserting defendant merely reported debt as outstanding without including that account was in dispute); *Bush v. Roundpoint Mortg. Servicing Corp.*, 122 F. Supp. 3d 1347, 1351 (M.D. Fla. 2015) (denying motion to dismiss where plaintiff alleged defendant failed to indicate that late payment characterization was disputed and/or add additional information that late payment was due to the fault of a third-party); *Dewi v. Wells Fargo Bank*, No. CV 12-2891 ABC SHX, 2012 WL 10423239, at *5 (C.D. Cal. Aug. 8, 2012) (holding plaintiff's allegations were sufficient where she claimed defendant failed to report that she raised a "bona fide dispute" over information defendant reported); *Montgomery v. Wells Fargo Bank*, No. C12-3895 TEH, 2012 WL 5497950, at *4 (N.D. Cal. Nov. 13, 2012) (holding complaint sufficiently alleged that defendant's report was inaccurate where an inference could be drawn that her account was open and not charged off). Furthermore, at least one court has denied a furnisher's summary judgment motion on a subsection (b) claim because there was a genuine issue of material fact regarding whether the furnisher, as part of its reasonable investigation, should have removed arguably misleading information. *E.g.*, *Rogers v. Equifax Info. Servs. LLC*, No. CV 14-1708-JFW AGRX, 2015 WL 467408, at *6 (C.D. Cal. Jan. 13, 2015) (holding there was a genuine issue of material fact where plaintiff claimed charges were fraudulent but defendant continued to report the

13 – FINDINGS AND RECOMMENDATIONS

account as "paid in full for less than the full balance").  Here, a reasonable trier of fact could find that the Account was materially misleading because it did not have a zero balance or otherwise inform potential creditors that the $195,960 deficiency was uncollectible.

### 2. Reasonableness of Investigation in Light of McDonald's Letters

Finally, OnPoint contends that McDonald's letters would have led an objectively reasonable furnisher to believe that the nature of his dispute was limited to ownership of his account.  While it is true that the first letter, which was short, discussed ownership, the second letter discussed more than that.

Although not a model of clarity, McDonald's second letter specifically referenced the $600,000 HELOC with OnPoint, asserted that Oregon law prohibited OnPoint from collecting the deficiency, and explained the he did not own money on the defaulted loan.  McDonald demanded proof that he "owe[d] them this money on a default[ed] unsecure loan" and asked the CRAs to "reinvestigate this wrongful debt."  Cervantes Decl., Exs. 15, 16 (ECF #72-1).  He also asked to "[r]emove[] . . . this debt from my credit report ASAP."  *Id.*  He explained that he could not get a home loan "because of the wrongful collection on [his] credit report."  Drawing all reasonable inferences in his favor, McDonald's second letter suggests that OnPoint had inaccurately reported the Account as an unsecured loan, with an outstanding balance but without referencing that it was uncollectible.  From this, a reasonable trier of fact could find that the investigation was unreasonable because it explored only the issue of ownership when McDonald's notice raised these additional issues.  Because questions of reasonableness such as this are usually left to the fact finder, *see Gorman*, 584 F.3d at 1155, 1157, OnPoint's motion for summary judgment regarding McDonald's subsection (b) claim should be denied.

///

**III.    State Law Claims**

Finally, in Claim Two, McDonald asserts several state law claims. He now concedes these are pre-empted by the FCRA. McDonald's Response 1, ECF #72. Therefore, OnPoint's motion regarding Claim Two should be granted.

## RECOMMENDATIONS

As McDonald has conceded, OnPoint's motion for summary judgment (ECF #67) should be GRANTED regarding Claim One to the extent it alleges a cause of action under 15 U.S.C. 1681s-2(a) and as to Claim Two in its entirety. The motion should otherwise be DENIED.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, February 22, 2018. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED February 8, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge